SUTTON, Circuit Judge,
dissenting.
At issue is whether Michigan’s statute of limitations bars Pamela Sutherland’s lawsuit to recover for injuries caused by allegedly defective breast implants. It does. Michigan does not have a discovery rule, and as a result its three-year limitations period started running at the time of Sutherland’s surgery — June 1, 1988. See Mich. Comp. Laws § 600.5805(13); Trentadue v. Buckler Lawn Sprinkler, 479 Mich. 378, 738 N.W.2d 664, 672 (2007). That gave her until June 1991 to file suit. She waited until January 1993 to file the action. That was too late.
The majority reaches a different conclusion and, it seems to me, makes two mistakes in the process. One, in claiming that current Michigan law (and its lack of a discovery rule) does not apply, it leaps over the fact that Sutherland did not preserve this argument below and thus forfeited it. Sutherland devoted one sentence in her summary judgment brief to responding to DCC’s choice-of-law argument that current Michigan law applies: “Not one of these Plaintiffs[] has any connection or nexus to the State of Michigan, yet Defendants try to use Michigan law, primarily.” R. 72 at 6. That did not “raise” any of the arguments she now makes based on North Carolina and Virginia law and, most particularly, pre-2007 Michigan law (which did contain a discovery rule). “[C]onclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument, do not meet th[e] standard” for raising an argument. United States v. Huntington Nat’l Bank, *555 574 F.3d 329, 332 (6th Cir.2009). That is this case. Any such .argument thus is forfeited. See Vill. of Maineville, Ohio v. Hamilton Twp. Bd. of Trs., 726 F.3d 762, 765 (6th Cir.2013). Current Michigan law applies.
Two, the majority reaches an issue we need not decide: Which choice-of-law rule applies when a district court in one State transfers a diversity suit to a related bankruptcy proceeding in another State? See 28 U.S.C. § 157(b); In re Coudert Bros. LLP, 673 F.3d 180, 191 (2d Cir.2012). The first imperative of a conflict-of-laws problem is: a conflict. When all roads lead to the same result, there is no conflict to resolve. See CenTra, Inc. v. Estrin, 538 F.3d 402, 409 (6th Cir.2008).
Even if we opt not to apply current Michigan law, Sutherland cannot prevail under any of the other statutes of limitations in play. Start with her arguments under North Carolina and pre-2007 Michigan law. If the law of either State applied, her claims would not accrue until she discovered her injuries.. See Trentadue, 738 N.W.2d at 672; Moll v. Abbott Labs., 444 Mich. 1, 506 N.W.2d 816, 828 (1993); N.C. Gen.Stat. § 1-52(16); Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 329 S.E.2d 350, 354 (1985) (“[A]s soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run.”). Yet, as the district court found, a reasonable person in Sutherland’s position would have linked her ailments to her breast implants by early 1989. Their harmful effects surfaced immediately. She underwent surgery on June 1, 1988. She began vomiting the next day. She suffered balance problems within the first week. And she was hospitalized just three months later in September 1988 because, in her words, she was “sick with those implants.” R. 66-3 at 34. By January 1989, Sutherland suffered hair loss and swelling in her., legs and ankles. As she acknowledged, “I got sick right after I had those implants put in, and I started going to doctors.... ” Id. at 9. Nothing in her life had changed, though, except the addition of breast implants. Even so, she did not file the lawsuit until 1993. Under the discovery rule, the clock started at the latest in 1989. That makes her January 1993 filing date too late under the three-year window provided by North Carolina law and pre-2007 Michigan law.
. As the majority sees things, North Carolina recognizes a “disease exception” that tolls the State’s statute of limitations until a doctor informed Sutherland that her problems were implant related. Ante at 552-53. With all due respect, I do not see how that exception applies even if North Carolina law did apply. The exception appears limited to diseases that arise from exposure to a harmful product at one’s jobsite. Wilder v. Amatex Corp., 314 N.C. 550, 336 S.E.2d 66 (1985), which established the exception, involved such a disease (asbestosis), and it relied almost entirely on prior cases involving similar diseases. See id. at 70-71. Indeed, several cases from North Carolina courts confirm that the exception was designed for “occupational disease cases.” Dunn v. Pac. Emp’rs Ins. Co., 332 N.C. 129, 418 S.E:2d 645, 647 (1992); see Payne v. Charlotte Heating & Air Conditioning, 172 N.C.App. 496, 616 S.E.2d 356, 363 (2005); Moore v. Standard Mineral Co., 122 N.C.App. 375, 469 S.E.2d 594, 597 (1996). Subsequent federal-court cases applying North Carolina law fit that bill too. See Hyer v. Pittsburgh Corning Corp., 790 F.2d 30, 32-33 (4th Cir.1986) (former insulator with asbestosis); Guy v. E.I. DuPont de Nemours & Co., 792 F.2d 457, 458 (4th Cir.1986) (former maintenance worker with disease from floor fin *556 ish). Sutherland did not contract her illness at work.
The Fourth Circuit, to be sure, has since said that “nothing in Wilder” suggests that tolling turns on a disease’s “status or lack of status as ... occupational.” Bullard v. Dalkon Shield Claimants Trust, 74 F.3d 531, 534 (4th Cir.1996). That does not seem like the best reading of Wilder, but even if it is, that does not help Sutherland. Wilder adds that the exception targets diseases that “normally develop over a long period of time after multiple exposures to offending substances” such that “[i]t is impossible to identify any particular exposure as the ‘first injury.’ ” 336 S.E.2d at 70. Bullard agrees: “[T]he court looks ... [to] the difficulty or impossibility of establishing the exact time the injury first occurs or the disease process begins.” 74 F.3d at 535. There is no such difficulty here. Sutherland herself admits that her problems were implant related and started the day after her surgery.
What of the Virginia statute of limitations? This limitations period could apply only if some applicable choice-of-law rule said so. None does. Whether we look to Michigan’s, North Carolina’s, or federal common law’s choice-of-law rules, none of them would apply the Virginia statute of limitations. North Carolina and federal common law would apply the statute of limitations of the forum: North Carolina or Michigan. See Boudreau v. Baughman, 322 N.C. 331, 368 S.E.2d 849, 857 (1988); Bickel v. Korean Air Lines Co., 83 F.3d 127, 130 (6th Cir.1996) (noting that the Restatement (Second) of Conflict of Laws (1971) ’ supplies the federal choice-of-law rules); Restatement (Second) § 142(1). And Michigan applies its own statute of limitations in this setting. See Mich. Comp. Laws § 600.5861. With Virginia out of reach and Michigan and North Carolina barring her claim, Sutherland’s claim fails as a matter of law..
One last note. The majority says tha,t we “ ‘usually defer’ to our sister circuits’ analysis of the law of states within their respective borders.” Ante at 548-49. I am dubious. Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), reversed a circuit court for deferring to a district court’s determination of its home state’s law, telling appellate courts to make these determinations themselves. “When de novo review is compelled,” the Court instructed, “no form of appellate deference is acceptable.” Id. at 238, 111 S.Ct. 1217. What was true in Salve Regina seems equally true here. It matters not whether the issue is potential deference to a district court’s determination of its home state’s law (Salve Regina) or potential deference to a sister court of appeals’ determination of its home state’s law (here).
The majority seeing these issues differently, I respectfully dissent.