NATIONSBANK OF NORTH CAROLINA, N.A., PLAINTIFF V.
TIMOTHY PARKER, DEFENDANT

No. COA99-812

(Filed 19 September 2000)

1. Notaries Public— attorney—negligent representation of signature's authenticity—no allegations of malice or corruption—no liability under third-party beneficiary doctrine

The trial court did not err by granting a motion for summary judgment in favor of defendant attorney on all claims that allege the attorney was deficient in performing his duties as a notary public on loan documents where two signatures were later determined to be forgeries, because: (1) plaintiff bank did not

## NATIONSBANK OF N.C. v. PARKER

[140 N.C. App. 106 (2000)]

plead any facts that allege the attorney performed his duties with malice or corruption; and (2) the attorney is immune from liability under the third-party beneficiary doctrine based on the fact that he made the negligent representation in his capacity as a notary.

**2. Attorneys— malpractice—notarized forged signatures—barred by statute of repose**

Plaintiff bank's claims based on the legal malpractice of defendant attorney who was deficient in performing his duties as a notary public on loan documents where two signatures were later determined to be forgeries are barred by the statute of repose under N.C.G.S. § 1-15(c), because: (1) the attorney closed the loan transaction more than six years before the amended complaint was filed; and (2) there are no allegations of an ongoing attorney-client relationship between plaintiff bank and defendant attorney.

**3. Fraud— constructive—breach of fiduciary duty—attorney notarized forged signatures**

Although plaintiff bank's claim of constructive fraud based upon an alleged breach of fiduciary duty by defendant attorney who notarized loan documents that contained forged signatures is not barred on statute of limitations grounds since it falls under the ten-year statute of limitations contained in N.C.G.S. § 1-56, this claim is insufficient to withstand a summary judgment motion, because: (1) there must be an allegation that the attorney sought to benefit himself, and payment of a fee to the attorney for work done by him does not by itself constitute sufficient evidence that he sought his own advantage in the transaction; and (2) there was no evidence that the amount paid to the attorney for notarizing and witnessing the loan documents would have been any different if the documents had not been forged.

Appeal by plaintiff from order entered 16 February 1999 by Judge Howard E. Manning, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 8 May 2000.

*Kenneth N. Barnes, and Holt, Longest, Wall & Blaetz, P.L.L.C., by Frank A. Longest, Jr., for plaintiff-appellant.*

*Wilson & Iseman, L.L.P., by Urs R. Gsteiger, for defendant-appellee.*

EDMUNDS, Judge.

Plaintiff NationsBank appeals the trial court's grant of defendant's motion for summary judgment. We affirm.

In 1992, plaintiff agreed to make a loan to Shamrock Country Club, Inc. (Shamrock), which operated a golf course in Alamance County. The golf course was situated on land owned by the parents of Shamrock's president, Steven Walker (Walker). The loan was conditioned upon the signing of a guaranty by Walker's parents (the Walkers). At the closing on 25 March 1992, defendant Timothy Parker, who was Walker's attorney, notarized several of the signatures on the loan documents and witnessed others. The loan funds were then distributed to Walker.

After Walker's death on 26 November 1996, the Shamrock loan went into default. Plaintiff initiated a collection effort by writing demand letters to the Walkers and to the executor of Walker's estate. The Walkers responded through counsel as early as 10 January 1997 that their signatures on the guaranty agreement were forgeries. In letters dated 3 February 1997 and 10 February 1997, the Walkers again advised plaintiff that their signatures had been forged. These letters referred plaintiff to a report prepared by a handwriting expert, which was contained in the court filing of a companion case.

Plaintiff filed suit on 6 June 1997, naming as defendants the estate of Steven Walker, Shamrock, and the Walkers. When neither Steven Walker's estate nor Shamrock answered, default judgment was entered against them. At a mediation conference on 12 March 1998, the Walkers provided plaintiff with an expert handwriting analysis supporting their claim that their signatures were forgeries. Plaintiff then amended its complaint to add Parker as a defendant under various theories of liability including negligence, breach of fiduciary duty, negligence as a notary public, legal malpractice, negligent misrepresentation, and constructive fraud. The Walkers later moved for summary judgment in their favor, which was granted without opposition from plaintiff. Defendant Parker moved for summary judgment, and the trial court dismissed all of plaintiff's claims against him in an order dated 16 February 1999. Plaintiff appeals.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter

of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). On appeal, the standard of review is (1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). The evidence presented is viewed in the light most favorable to the non-movant. *See Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975).

The trial court's order granting defendant's summary judgment motion contained findings of fact and conclusions of law. In *Mosley v. Finance Co.*, this Court stated:

> A trial judge is not required to make finding[s] of fact and conclusions of law in determining a motion for summary judgment, and if he does make some, they are disregarded on appeal. Rule 52(a)(2) does not apply to the decision on a summary judgment motion because, if findings of fact are necessary to resolve an issue, summary judgment is improper. However, such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment.

36 N.C. App. 109, 111, 243 S.E.2d 145, 147 (1978) (citations omitted).

The order states that plaintiff's various claims could not survive summary judgment because either they are barred by the applicable statute of limitations or defendant is immune from liability for negligence in performing his duties as a notary public.

A. Claims Against Defendant in his Capacity as Notary Public

[1] We begin by considering plaintiff's claims based upon defendant's acts or failures to act in his capacity as a notary public at the closing. In North Carolina a notary public is a public officer. *See Nelson v. Comer and Willoughby v. Adams*, 21 N.C. App. 636, 205 S.E.2d 537 (1974). "Absent allegations of malice or corruption a notary may not be held liable for acts within her scope of duties." *McGee v. Eubanks*, 77 N.C. App. 369, 374, 335 S.E.2d 178, 182 (1985) (citation omitted). This rule applies even when the notary is also an attorney. *See Nelson*, 21 N.C. App. 636, 205 S.E.2d 537. Plaintiff did not plead any facts that allege defendant performed· his duties with malice or corruption. Accordingly, we affirm the trial court's grant of summary judgment on all claims that allege defendant was deficient in performing his duties as a notary public.

Plaintiff contends that its amended complaint "contains sufficient facts for a jury to determine whether the Defendant Parker is liable to the Plaintfiff under the third party beneficiary doctrine." Defendant contests this assertion. However, even assuming that this issue was properly pled, the allegedly negligent representation underlying plaintiff's claim was defendant's representation that the Walkers had signed the loan documents. Because defendant made the representation in his capacity as a notary, he is immune from liability. *See id.*

B.  Claims Against Defendant in his Capacity as an Attorney

**[2]** Plaintiff's amended complaint alleged an attorney-client relationship between plaintiff and defendant. The trial court's order stated that summary judgment was granted because claims based on defendant's role as an attorney were barred by N.C. Gen. Stat. § 1-15(c) (1999). This statute governs legal malpractice claims, *see Hargett v. Holland*, 337 N.C. 651, 447 S.E.2d 784 (1994); *McGahren v. Saenger*, 118 N.C. App. 649, 456 S.E.2d 852 (1995); *Sharp v. Teague*, 113 N.C. App. 589, 439 S.E.2d 792 (1994), and reads in pertinent part:

> (c) Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action . . . .

N.C. Gen. Stat. § 1-15(c).

This statute creates a statute of limitations and a statute of repose, both of which are based upon the date of the " 'last act of the defendant giving rise to the cause of action.' " *Sharp*, 113 N.C. App. at

593, 439 S.E.2d at 795 (citation omitted). Our Supreme Court has stated:

> Statutes of limitation are generally seen as running from the time of injury, or discovery of the injury in cases where that is difficult to detect. They serve to limit the time within which an action may be commenced after the cause of action has accrued. Statutes of repose, on the other hand, create time limitations which are not measured from the date of injury. These time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.

*Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276-77 n.3 (1985). A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985). Therefore, if the statute of repose has run, plaintiff's action is barred.

Under section 1-15(c), we must determine defendant's last act giving rise to a cause of action. Particularly pertinent to this analysis is our Supreme Court's holding in *Hargett*, 337 N.C. 651, 447 S.E.2d 784. In *Hargett*, the plaintiffs sued an attorney for negligently drafting a will. In reversing this Court's ruling that "defendant's last act occurred immediately before testator's death, the last act being defendant's failure to fulfill a continuing duty to prepare a will properly reflecting the testator's testamentary intent," *id.* at 655, 447 S.E.2d at 788, the Supreme Court stated:

> We hold that under the arrangement alleged in the complaint, which was a contract to prepare a will after which defendant was an attesting witness to the will, defendant's duty was simply to prepare and supervise the execution of the will. This arrangement did not impose on defendant a continuing duty thereafter to review or correct the will or to prepare another will.

*Id.*

In the case at bar, defendant closed the loan transaction on 25 March 1992, more than six years before the amended complaint was filed. There are no allegations of an ongoing attorney-client relationship between plaintiff and defendant. Therefore, in accordance with the holding in *Hargett*, any of plaintiff's claims based on legal malpractice are barred by the statute of repose set forth in N.C. Gen. Stat. § 1-15(c).

The applicable allegations in the amended complaint read:

18. The Plaintiff justifiably relied on the representations, acts of witnessing and notarial acts of Defendant Parker which indicated that Defendants Shamrock, Charles C. Walker, Earle W. Walker and Steven C. Walker (now deceased and represented in this action by his personal representative) did in fact sign the loan documents. The acts and conduct of Parker in communicating with the Plaintiff, arranging for the execution of the loan documents, witnessing, reviewing, completing, preparing and delivering the loan documents, all constitute and exhibit an attorney-client relationship between Parker and the Plaintiff. Defendant Parker knew or should have known that the Plaintiff would rely on him in his capacity as an attorney at law to see to it that the loan documents were properly executed in a manner that would protect the interests of the Plaintiff and that same would be genuine and enforceable in accordance with their respective terms.

19. If it is determined by the finder of fact in this matter that any of the Defendants other than Parker did not in fact sign the loan documents, then the Plaintiff hereby alleges that Defendant Parker was negligent in that he failed to properly witness and notarize the loan documents in a way which would provide the Plaintiff with legally enforceable documents, including more particularly as against Defendants Charles C. Walker and Earle W. Walker, and that said negligence was the proximate cause of the damages described in this complaint suffered by the Plaintiff.

20. At the time of the execution of the loan documents, Plaintiff and Defendant Parker had an attorney-client relationship. If it is determined by the finder of fact in this matter that any of the Defendants other than Parker did not in fact sign the loan documents, then the Plaintiff hereby alleges that Defendant Parker negligently breached his fiduciary duty to the Plaintiff in that he failed to properly complete, witness and notarize the loan documents in a way which would provide the Plaintiff with legally enforceable documents, including more particularly as against Defendants Charles C. Walker and Earle W. Walker, and that said breach of fiduciary duty was the proximate cause of the damages described in this complaint suffered by the Plaintiff.

In its second amended complaint, plaintiff added a claim for constructive fraud alleging:

21. Defendant Parker, in his capacities as an attorney and notary public handling the closing of the loan transactions as described above in this Complaint, assumed with the Plaintiff a position of trust and confidence which created a fiduciary duty owing to the Plaintiff from Defendant Parker. The Plaintiff justifiably relied on Defendant Parker to properly complete, witness and notarize the loan documents in a way which would provide the Plaintiff with legally enforceable documents. If it is determined by the finder of fact in this matter that any of the Defendants other than Parker did not in fact sign the loan documents, then Defendant Parker in his position of an attorney and notary public failed to fulfill his fiduciary obligations to the Plaintiff. The Plaintiff further alleges that Defendant Parker breached his fiduciary duty to the Plaintiff, said breach of fiduciary duty constitutes a constructive fraud, and said breach of fiduciary duty was the proximate cause of the damages described in this complaint suffered by the Plaintiff. Upon information and belief, Defendant Parker took advantage of his position of trust and benefit[t]ed from his actions in that he was paid for his services in closing the subject loan transaction.

With one exception, these pleadings fail because of defendant's status as a notary or because they are claims for legal malpractice barred by N.C. Gen. Stat. § 1-15(c). *See, e.g., Sharp*, 113 N.C. App. at 592, 439 S.E.2d at 794 (noting "claims 'arising out of the performance of or failure to perform professional services' based on negligence or breach of contract are in the nature of 'malpractice' claims, [and] are governed by N.C. Gen. Stat. § 1-15(c)"). Similarly, any claim based on defendant's breach of a fiduciary duty is time barred. *See Heath v. Craighill, Rendleman, Ingle & Blythe*, 97 N.C. App. 236, 244, 388 S.E.2d 178, 183 (1990) ("Breach of fiduciary duty is a species of negligence or professional malpractice."); *Childers v. Hayes*, 77 N.C. App. 792, 795, 336 S.E.2d 146, 148 (1985) (holding breach of fiduciary duty claim is essentially a negligence or professional malpractice claim).

[3] The exception is plaintiff's only remaining claim alleging constructive fraud. A claim of constructive fraud based upon a breach of a fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56 (1999). *See Barger v. McCoy Hillard & Parks*, 120 N.C. App. 326, 336, 462 S.E.2d 252, 259 (1995), *modified,* 122 N.C. App. 391, 469 S.E.2d 593 (1996), *affirmed in part, reversed on other grounds in part,* 346 N.C. 650, 488 S.E.2d 215 (1997).

Therefore, this claim is not barred on statute of limitations grounds. However, to maintain a claim of constructive fraud, there must be an allegation that defendant sought to benefit himself. *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997). In *Barger*, the defendants were an accounting firm and individual accountants in the firm employed by plaintiffs. *See id.* at 654, 488 S.E.2d at 217. The Supreme Court held:

> Plaintiffs contend that their forecast of evidence shows that defendants did benefit from their alleged misrepresentations regarding TFH's financial status because they obtained the benefit of their continued relationship with plaintiffs. This is insufficient to establish the benefit required for a claim of constructive fraud, however. Presumably, defendants would have obtained the benefit of a continued relationship with plaintiffs equally by providing accurate information about TFH's financial health. Moreover, plaintiffs have alleged no facts tending to show that defendants gained anything by negligently misrepresenting the corporation's true financial condition.

*Id.* at 667, 488 S.E.2d at 224.

Implicit in this holding is a finding that payment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage in the transaction. Allegations in the case at bar, similar to those made in *Barger*, are that defendant "took advantage of his position of trust and benefit[t]ed from his actions in that he was paid for his services in closing the subject loan transaction." There was no evidence that the amount paid defendant for notarizing and witnessing the loan documents would have been any different if the documents had not been forged. We do not believe that this allegation, taken as true, is sufficient to withstand defendant's summary judgment motion. Consequently, we conclude that the trial court properly granted summary judgment as to this charge.

The trial court's order granting defendant's summary judgment motion is affirmed.

Affirmed.

Chief Judge EAGLES and Judge LEWIS concur.